**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

GRAPHIC PACKAGING
INTERNATIONAL, INC.,
a Delaware corporation,

Plaintiff,

vs.

C.W. ZUMBIEL CO.,
an Ohio corporation,

      Defendant.

Civil Action File No.

3:10-cv-891-99TJC-JBT

**PLAINTIFF GRAPHIC PACKAGING INTERNATIONAL, INC'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF**

AKERMAN SENTERFITT LLP

WOMBLE CARLYLE SANDRIDGE & RICE,
PLLC (Co-Counsel)

Kirk W. Watkins (*pro hac vice*)
Email: kwatkins@wcsr.com
Michael A. Cicero (*pro hac vice*)
Email: mcicero@wcsr.com
271 17th Street, Suite 2400
Atlanta, Georgia 30363
Telephone:  (404) 872-7000
Facsimile:  (404) 870-7490

James M. Lennon (*pro hac vice*)
Email: jlennon@wcsr.com
222 Delaware Ave., Suite 1501
Wilmington, Delaware 19801
Telephone: (302) 252-4326
Facsimile: (302) 661-7726

Timothy J. McDermott, Esquire
Trial Counsel
Florida Bar No. 0747531
Email: timothy.mcdermott@akerman.com
Ryan R. Fuller
Florida Bar No. 635324
Email: ryan.fuller@akerman.com
50 N. Laura Street, Suite 3100
Jacksonville, FL  32202
Telephone: (904) 798-3700
Facsimile: (904) 798-3730

*ATTORNEYS FOR PLAINTIFF
GRAPHIC PACKAGING INTERNATIONAL,
INC.*

Date:  February 21, 2011

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................................... 1

II.   RESPONSE TO ZUMBIEL'S PROPOSED DEFINITIONS .......................... 1

A.    Errors Repeated By Zumbiel Throughout Its Brief ...................................... 1

B.    Proper Construction of the '551 Patent ........................................................ 2

      1.    "detachable portion" – Claims 23, 33, 43 ........................................... 2

      2.    "retainer portion" – Claims 23, 33, 43 ................................................ 5

      3.    "removes," "removed," "removal" – Claims 23, 29, 33, 39, 43 ......... 7

      4.    "upper portion" – Claims 23, 33, 43 ................................................... 8

      5.    "obliquely" – Claim 52 ....................................................................... 9

C.    Proper Construction of the '003 Patent ...................................................... 11

      1.    "corner" – Claims 1, 14, 23 .............................................................. 11

      2.    "dispensing flap" – Claims 1, 14, 23 ................................................ 12

      3.    "first section" and "second section" – Claims 1, 14, 23 ................... 14

      4.    "partially along and collinear with" – Claims 1, 12, 14, 23, 32 ........ 16

      5.    "separated" – Claims 1, 14 ................................................................ 17

      6.    "pull tab" – Claims 2, 17, 22 ............................................................ 18

      7.    "detachable," "detached" – Claims 4, 13, 27, 33 ............................. 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Application of Fortney, 312 F.2d 814, 817-18 (C.C.P.A. 1963) ........................................ 4

Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc., 334 F.3d 1294, 1299 (Fed. Cir. 2003) ....................................................................................................................... 1, 19

Cordis Corp. v. Boston Scientific Corp., 561 F.3d 1319, 1328-29 (Fed. Cir. 2009)........ 14

CVI/Beta Ventures, Inc. v. Tura LP, 112 F.3d 1146, 1159 (Fed. Cir. 1997) .................. 10

DSW, Inc. v. Shoe Pavilion, Inc., 537 F.3d 1342, 1347 (Fed. Cir. 2008) .................... 1, 19

Enzo Biochem, Inc. v. Applera Corp., 599 F.3d 1325, 1332 (Fed. Cir. 2010).................. 9

Exxon Research & Eng'g Co. v. United States, 265 F.3d 1371, 1373 (Fed. Cir. 2001) ....................................................................................................................... 9

Fonar Corp. v. Johnson & Johnson, 821 F.2d 627, 632, (Fed. Cir. 1987)....................... 10

Northern Telecom Ltd. v. Samsung Elecs. Co., 215 F.3d 1281, 1295 (Fed. Cir. 2000) ........................................................................................................................ 1

Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005)....................................... 10

Playtex Prods., Inc. v. Procter & Gamble Co., 400 F.3d 901, 908 (Fed. Cir. 2005) ........ 10

Spansion, Inc. v. Int'l Trade Comm'n, 629 F.3d 1331, 1344 (Fed. Cir. 2010).................. 9

Stumbo v. Eastman Outdoors, Inc., 508 F.3d 1358, 1362 (Fed. Cir. 2007) ..................... 6

Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp., 587 F.3d 1339, 1348 (Fed. Cir. 2009)............................................................................................................. 6

**Rules**

37 C.F.R. § 1.84(r)(1) (2009)........................................................................................ 12

## I.      INTRODUCTION

Graphic Packaging International, Inc. ("GPI") submits this brief, pursuant to this Court's January 10, 2011 Order, in response to DEFENDANT C.W. ZUMBIEL CO.'S OPENING CLAIM CONSTRUCTION BRIEF filed by C.W. Zumbiel Co. ("Zumbiel") on February 7, 2011.[1]

## II.     RESPONSE TO ZUMBIEL'S PROPOSED DEFINITIONS

### A.      Errors Repeated By Zumbiel Throughout Its Brief

Zumbiel repeats a series of errors throughout *Zumbiel's Opening Brief* that are summarized and addressed in this subsection, collectively, for the convenience of the Court. First, all of the dictionary references cited by Zumbiel are current online dictionary definitions, rather than sources that predate or are contemporaneous with the filing of the patent applications at issue.   Accordingly, the definitions offered by Zumbiel are improper and should be disregarded.[2]   Second, Zumbiel failed to address why the terms that GPI maintains need no construction are unclear and require a construction beyond their plain and ordinary meaning.[3] Third, *Zumbiel's Opening Brief* fails to address GPI's proposed constructions for every claim

---

[1] Dkt. No. 40 (*January 10, 2011 Order*); Dkt. No. 47 (*Zumbiel's Opening Brief*).

[2] *See Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1299 (Fed. Cir. 2003) ("These references are dated well after the [patent at issue], which was filed in March 1991 and issued in June 1993.  They are not contemporaneous with the patent, do not reflect the meanings that would have been attributed to the words in dispute by persons of ordinary skill in the art as of the grant of the [patent at issue], and for those reasons are not considered in our de novo claim construction analysis.")

[3] *DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1347 (Fed. Cir. 2008) ("[A]bsent contravening evidence from the specification or prosecution history, plain and unambiguous claim language controls the construction analysis.") (*citing Northern Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1295 (Fed. Cir. 2000) ("The plain and ordinary meaning of claim language controls, unless that meaning renders the claim unclear or is overcome by a special definition that appears in the intrinsic record with reasonable clarity and precision.")) (internal citations omitted).

term at issue.[4]  The parties exchanged proposed constructions on January 18, 2011, pursuant to

the Case Management Report agreed to by Zumbiel.[5]  The exchange of proposed constructions

allows the parties to make relative comparisons between, and arguments about, each party's

proposed constructions in opening briefing, as well as narrow disputed issues before briefing.

By waiting until its responsive brief to address GPI's proposed constructions, Zumbiel deprives

this Court (and GPI) of the benefit of a response to any alleged inadequacies regarding GPI's

proposed constructions.  GPI therefore reserves the right to reply to any argument raised by

Zumbiel for the first time in its responsive brief.

**B.      Proper Construction of the '551 Patent**

**1.      "detachable portion" – Claims 23, 33, 43**

| Exemplary Claim Use | GPI's Proposal | Zumbiel's Proposal |
|---|---|---|
| "***detachable portion***" (Claims 23, 29, 33, 39, and 43 of the '551 Patent)<br><br>23. … the first end comprising a ***detachable portion*** and a retainer portion; the ***detachable portion*** removes an upper portion of the first end that is less than the diameter of the top row cylindrical article; and the retainer portion retains the top row cylindrical article in the carton after the ***detachable portion*** is removed. | "portion separable from the retainer portion along one or more tear line(s)" | "a portion of the carton that is completely separable such that it is no longer connected to the carton" |

Zumbiel's proposed construction is wrong for at least the following three reasons:

First, in addition to its improper reliance on a modern dictionary reference, Zumbiel fails

to consider the text surrounding the claims in question.[6]  Since "detachable portion" is always

---

[4] Dkt. No. 47 at pp. 4-23.

[5] Dkt. No. 36 at p. 3.

[6] *Brookhill,* 334 F.3d at 1300 ("While dictionaries and treatises are useful resources in determining the ordinary and customary meaning or meanings of disputed claim terms, the correct meaning of a word or phrase is informed only by considering the surrounding text.  This is why consulting dictionary definitions is simply a first step in the claim construction analysis

and only introduced in the claims as follows: "**the first end comprising a detachable portion** and a retainer portion …;" the "**detachable portion**" is claimed as part of, and must be considered in its relationship with, the first end.[7]  Because "detachable" describes the nature and relationship of the "detachable portion" relative to the *first end*, GPI's proposed definition contemplates the surrounding text and is superior to Zumbiel's proposed definition that relates separation to the carton as a whole and that adds that the "detachable portion" must be "completely detachable", without support whatsoever in the claims or the text surrounding "detachable portion" as used in the claims.  The Court of Customs and Patent Appeals, the predecessor court to the Federal Circuit, addressed a very similar construction error as follows:

> [The claim at issue][8] thus describes the outer wrapping:



> '* * * an **outer** reinforcing **wraping** [*sic*] [29] superposed **about** said **inner body** [24] and **detachably held therearound**, said outer wrapping [29] having at least a readily detachable peeling edge portion to facilitate **unwrapping** and **removal** thereof **from** the **inner dody** [*sic*] [24] to permit expansion of the inner body [24] by separation at said helical separation line substantially from end to end of the container * * *.'

and is another reason why resort must always be made to the surrounding text of the claims in question, the other claims, the written description, and the prosecution history.").

[7] *See* '551 Patent, 8/16-17, 8/61-62, 9/39-40 (A13-14).  GPI Notes that all citations to "#/#"herein refer to the column/line numbers of the referenced patent, and all citations to "A#" herein refer to the Appendix, filed in three parts (Dkt. Nos. 48-1, 48-2, 48-3), to GPI's Opening Brief (Dkt. No. 48).

[8] *See* U.S. Patent No. 3,304,185, to Fortney, online (last visited Feb. 17, 2011) at: http://www.google.com/patents/about?id=0GUeAAAAEBAJ&dq=3304185

3

… It will be observed that the claim clearly contains no specific reference to the removability of the *entire* wrapping and that this meaning is read into the claim by the Patent Office by construing the words '*detachably*' and '*unwrapping*,' the contention being that these words 'obviously' and 'clearly' refer to an outer wrapping *detachable as a whole and not to a portion only* of the outer wrapping. We see nothing so clear or obvious in the language and, in giving it the broadest reasonable construction, we think that full value must be given to the concluding functional language or statement of purpose, which obviously modified the preceding words.

In our opinion, if *detaching or unwrapping less than the entire* outer wrapping *will carry out the function expressly set forth in the claim* as the raison d'etre for having an outer wrapping which is detachable or unwrappable, as detaching appellant's rip-strip portion of his outer wrapping will do, then such *a partially detachable wrapping will support the claim*. We believe that the final clause modifies the two words on which the Patent Office relies and that it was in *error* in *construing* them to have only the limited meaning of *complete detachability*.[9]

Second, Zumbiel improperly asserts that the '551 Patent specification "teaches that the dispensing flap 68 must be <u>completely removed</u> from the carton in order for cans to be removed from the exiting end of the carton."[10]  The '551 Patent specification teaches that the opening created by removal of the dispensing flap should be large enough to permit a person to grasp the cans in the top layer in the carton.[11]  This teaching does *not* require that the flap be completely removed from the carton, rather than removed (i.e., detached) from the dispensing end and possibly folded back along a different panel.

Third, Zumbiel improperly ignores how the term "detachable portion" was used by the applicant during prosecution.  As discussed in *GPI's Opening Brief*, the hinged flap of the Dutcher patent was characterized by the applicant as a "detachable portion."[12]  For example,

---

[9] *Application of Fortney*, 312 F.2d 814, 817-18 (C.C.P.A. 1963) (*emphasis added*).

[10] Dkt. No. 47, p. 6 (*Zumbiel's Opening Brief*) (<u>emphasis in original</u>).

[11] *See* '551 Patent 5/53-57 (A12).

[12] Dkt. No. 48, pp. 6-7, 9 (*GPI's Opening Brief*).

applicant referred to "… Dutcher's disclosed *detachable portion* formed by tear lines 54-56-68-70[,]" and "Dutcher's *detachable portion* 64, 76 is located in panels 32, 40 and not in any end formed by any of flaps 6, 14, 36, 44."[13]   The figures and description of Dutcher show this detachable portion "hinged" along "fold line 58," rather than completely separated from the carton.[14]   "When prior art that sheds light on the meaning of a term is cited by the patentee, it can have particular value as a guide to the proper construction of the term, because it may indicate not only the meaning of the term to persons skilled in the art, but also that the patentee intended to adopt that meaning."[15]   The examiner never traversed the above referenced characterizations by the patentee of Dutcher as containing a "detachable portion" and, in fact, allowed the claims after these characterizations were made in the patenee's office action response.   Thus, the broad use of "detachable portion" during prosecution proves that "detachable portion" was never intended to be limited only to a portion that is "completely separable … [from] the carton."   Zumbiel's construction is, therefore, wrong and GPI's construction is correct.

### 2.   "retainer portion" – Claims 23, 33, 43

| Exemplary Claim Use | GPI's Proposal | Zumbiel's Proposal |
|---|---|---|
| "***retainer portion***"   (Claims 23, 33, 43 of the '551 Patent)<br><br>23. … the first end comprising a detachable portion and ***a retainer portion***; the detachable portion removes an upper portion of the first end that is less than the diameter of the top row cylindrical article; and ***the retainer portion*** retains the top row cylindrical article in | Needs no construction<br><br>or<br><br>"portion separable from the detachable portion along one or more tear  line(s)" | "a portion of the carton that keeps the cylindrical articles from falling out of the carton when the detachable portion is completely separated from the carton" |

---

[13] (A28-29) (*emphasis added*).

[14] *See* Dkt. No. 18-16, FIGs. 1-6, 1/21-23 ("The tearing portion can be hingedly connected to the remainder of the carton or completely removed from the carton … ").

[15] *Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1045 (Fed.Cir.2000) (*emphasis added*) (*quoted in V-Formation Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1311 (Fed. Cir. 2005)).

| the carton after the detachable portion is removed. | | |
|---|---|---|

Zumbiel's proposed construction is wrong for at least the following two reasons:

First, in addition to its improper reliance on a modern dictionary reference and its failure to address why the term is unclear and requires a construction, Zumbiel's proposal is redundant of language already in the claim.[16]  If Zumbiel's proposed construction replaced the term "retainer portion" in the Claim 23, for example, the affected part of this claim would read as follows:

> 23. … the [*portion of the carton that keeps the cylindrical articles from falling out of the carton when the detachable portion is completely separated from the carton*] retains the top row cylindrical article in the carton after the detachable portion is removed.[17]

Zumbiel's lengthy proposed definition, in its constituent parts, is redundant of the claim language already existing in the claims or otherwise improper as shown in the following table:

| Redundant words in Zumbiel's proposal: | Basis for redundancy: |
|---|---|
| *of the carton* | The claim(s) specify that the retainer portion is a part of the first end (more specific) and not merely part of the carton (more global) |
| *that keeps the cylindrical articles from falling out of the carton* | This constituent part is repetitive of the already existing claim language "retains the top row cylindrical article" |
| *when the detachable portion is completely separated from the carton* | This constituent part is improperly adds incorrect and unnecessary claim language to "after the detachable portion is removed" (as discussed elsewhere herein) |
| *completely* | The claim(s) specify that the detachable portion is separated "from the first end", not "completely separated from the carton" as |

---

[16] *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1348 (Fed. Cir. 2009) ("The drafters could not have intended to claim 'soluble calcium sulfate anhydrite,' as that would have been redundant because the word 'anhydrite' itself means 'anhydrous calcium sulfate.'") (citation omitted); *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1362 (Fed. Cir. 2007) (rejecting construction of a claim term that would render other language in the claim "superfluous").

[17] *See* '551 Patent 8/21-22 (A13).

| | |
|---|---|
| | urged by Zumbiel (see below) |
| *from the carton* | The claim(s) specify that the detachable portion is removed from the first end, not "from the carton" as urged by Zumbiel |

Second, Zumbiel's proposed definition of "retainer portion" repeats the mistake of its proposal for "detachable portion" by requiring that the "detachable portion" be completely removed *from the carton*. For the same reasons recited above and in *GPI's Opening Brief*, these terms ("detachable portion" and "retainer portion") should *not* be construed to require that the detachable portion be completely detachable *from the carton*. Therefore, if construction for this term is required, Zumbiel's construction is wrong and GPI's construction is correct.

### 3.    "removes," "removed," "removal" – Claims 23, 29, 33, 39, 43

| Exemplary Claim Use | GPI's Proposal | Zumbiel's Proposal |
|---|---|---|
| *removes*, *removed*, *removal* (Claims 23, 29, 33, 39, 43 of the '551 Patent)<br><br>23. … the detachable portion *removes* an upper portion of the first end …the retainer portion retains the top row cylindrical article in the carton after the detachable portion is *removed*.<br><br>29. The carton of claim 23, wherein the structural integrity of the carton is maintained after *removal* of the detachable portion. | Needs no construction<br><br>or<br><br>"Displac(es)(ed)(ement) from the place or position originally occupied" | "takes off, taken off, taking off" |

The distinction between GPI's and Zumbiel's proposals appears to be of little consequence in this matter. The real issue remains whether the thing being removed must be removable *from the entire carton* or just removable *from the first end*. In any event, Zumbiel's proposed construction is wrong not only for its improper reliance a modern dictionary reference, but also for the same reasons addressed above regarding "detachable portion" and below regarding "dispensing flap", "separated", and "detachable"/"detached". That is, the patent claims should not be construed so narrowly as to require complete removal *from the carton*. Therefore, if construction for this term is required, Zumbiel's construction is wrong and GPI's

construction is correct.

### 4.     "upper portion" – Claims 23, 33, 43

| Exemplary Claim | GPI's Proposal | Zumbiel's Proposal |
|---|---|---|
| "***upper portion***"  (Claims 23, 33, 43 of the '551 Patent)<br><br>23. … the detachable portion removes ***an upper portion*** of the first end that *is less than the diameter of the top row cylindrical article*; and the retainer portion retains the top row cylindrical article in the carton after the detachable portion is removed. | "a region above a first (uppermost) turn of a tear line of the first end" | "a portion of the first end located above the lower portion" |

Zumbiel's proposed construction is wrong for at least the following two reasons:

First, in addition to its improper reliance on a modern dictionary reference, Zumbiel improperly suggests that "[t]he specification … is completely silent as to where the upper portion is located on the first end."[18]  Zumbiel's suggestion is wrong because the specification expressly describes the upper portion as the region defined by a tear line extending a "*distance D*" before it turns to form "*angle B*":

> The top layer of cans in the two tiers is prevented from rolling out by end retention projections 84 and 86. *Tear line 70 only extend*s along fold line 36 *a distance D* which is slightly *less than the diameter of the top layer of cans* being contained. This is sufficient to prevent the top layer of cans from rolling out of the carton but yet not prevent an obstacle to their easy removal by the consumer. *Tear line 70 turns at an angle B* and then turns again at angle A to form the bottom tear line 96 on both outside top end flap 34 and bottom end flap 50.[19]

The "upper portion" is also illustrated in the figures of the '551 Patent, in particular FIG. 1 and FIG. 2, which were annotated and reproduced in *GPI's Opening Brief*.[20]  Zumbiel improperly asserts that "upper portion" can have no meaning beyond its proposed generic (and circular)

---

[18] Dkt. No. 47 at p. 10 (*Zumbiel's Opening Brief*).

[19] *See* '551 Patent 5/15-24 (A12) (*emphasis added*).

[20] Dkt. No. 48 at p. 11 (*GPI's Opening Brief*).

definition of "upper portion" as the part above the "lower portion". The parties do not define "lower portion" since it is not recited in any asserted claim, and its inclusion in Zumbiel's definition of "upper portion" renders that definition improper or, at the very least, inferior to GPI's proposed definition.

Second, Zumbiel is wrong to suggest that this term is indefinite. Notably, Zumbiel contradicts its own assertion here by defining "upper portion" as the part of "the first end that is *less than the diameter of the top row cylindrical article*."[21] Contradiction notwithstanding, "[i]ndefiniteness requires a determination whether those skilled in the art would understand what is claimed."[22] An indefiniteness determination renders the applicable claim invalid, and "'[b]ecause a patent is presumed to be valid, the evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence.'"[23] "[I]f the meaning of the claim is *discernible*, even though the task may be formidable and the conclusions may be one over which reasonable persons will disagree, [the Federal Circuit has] held the claim sufficiently clear to avoid invalidity on indefiniteness grounds."[24] "Upper portion" is *discernable* because it is described in the claims as the part that is less than the diameter of the top row cylindrical article which, in turn, is described in the specification as "*distance D*" of the tear line down from the top of the first end before it turns to form "*angle B*". Therefore, Zumbiel's construction and indefiniteness arguments are wrong and GPI's construction is correct.

### 5.    "obliquely" – Claim 52

---

[21] *Id*. (*emphasis added*)

[22] *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1344 (Fed. Cir. 2010) (*quoting Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010)).

[23] *Spansion*, 629 F.3d at 1344 (*quoting Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1345 (Fed. Cir. 2005)).

[24] *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1373 (Fed. Cir. 2001).

| Exemplary Claim | GPI's Proposal | Zumbiel's Proposal |
|---|---|---|
| "obliquely" (Claim 52 of the '551) <br><br> 52. A carton blank … wherein the at least one tear line extends from an intermediate portion of the first panel ***obliquely*** to the second panel end flap and ***obliquely*** to the third panel end flap ... | "in a path that includes a segment that is neither perpendicular nor parallel" | "neither perpendicular nor parallel" |

Zumbiel's proposed construction is wrong for at least the following reason:

In addition to its improper reliance on a modern dictionary reference, Zumbiel, referring to the tear line 70 shown in Figs. 1 and 2 of the '551 Patent as extending obliquely in top side panel 14 to the second panel end flap and third panel end flap, attempts to read this embodiment into claim 52 and thereby, in effect, limit the term "obliquely" to "entirely obliquely".  However, claim 52 is not so limited, and claims of a patent may only be limited to a preferred embodiment by the express declaration of the patentee, which is not the case here.[25]

Moreover, Zumbiel entirely ignores the fact that the term "obliquely" is also used in Claims 25 and 35 which, although not presently asserted in this suit, depend from claims 23 and 33 and should be construed in a manner consistent with the rest of the claims.[26]  GPI maintains that "obliquely" is intended to describe the orientation of a "segment" of a tear line of a larger carton section, which is consistent with the claims, because, for example, the "retainer portion" that "extends obliquely" in Claims 25 and 35 has multiple segments (or sides) each of which has a different orientation, some of which are not oblique.

---

[25] *Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 908 (Fed. Cir. 2005).

[26] *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1159 (Fed. Cir. 1997) ("[T]he meaning of a term in a claim must be defined in [a] manner that is consistent with its appearance in other claims in the same patent.") (*citing Fonar Corp. v. Johnson & Johnson*, 821 F.2d 627, 632, (Fed. Cir. 1987)); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term.").



As the above annotation of '551 Patent FIG. 2 illustrates,[27] Zumbiel's proposal is not consistent across all claims because it cannot be used to describe the "retainer portion" of Claims 25 and 35, which has multiple segments (i.e., sides) with multiple different orientations.  Two of three segments of this retainer portion are not oblique while one segment is oblique.  Zumbiel's construction is therefore wrong.  In order for each and every use of the term "obliquely" in the claims to be understood and afforded consistent meaning, GPI's proposed construction must be followed.

C.    **Proper Construction of the '003 Patent**

1.    **"corner" – Claims 1, 14, 23**

| Exemplary Claim | GPI's Proposal | Zumbiel's Proposal |
|---|---|---|
| "***corner***" (Claims 1, 14, 23 of the '003 Patent)<br><br>1. A package comprising… a first panel connected | "region at or near the intersection of two or more planes" | "the point where converging lines, edges, or sides meet" |

---

[27] The figure above was also included in GPI's Opening Brief.  (Dkt. No. 48 at p. 13).

11

| | | |
|---|---|---|
| to a second panel the first panel connected to a third panel, and a fourth panel opposite the first panel; the first panel, the second panel, and the exiting end meet at a first ***corner***; the first panel, the third panel, and the exiting end meet at a second ***corner***…. | | |

Zumbiel's proposed construction is wrong for at least the following reason:

In addition to its improper reliance on a modern dictionary reference, Zumbiel's proposed definition of "corner" ignores, despite ample notice, the incontrovertible intrinsic evidence cited in *GPI's Opening Brief*.  This evidence, i.e. the Patent Office regulations regarding the meaning of arrows at the ends of lead lines, was detailed in GPI's Motion for Preliminary Injunction and was un-rebutted by Zumbiel.[28]  Zumbiel's proposal still ignores the fact that the Code of Federal Regulations themselves provide that arrows, such as those used by GPI in FIG. 2 and FIG. 3 of the '003 Patent to point to the first and second corners ("FC" and "SC"), are intended to indicate "the ***entire section*** to which [those arrows] point[]."[29]  If the applicant intended to limit the referenced corners to points instead of regions, lead lines alone would have been used instead of lead lines with arrows.  Zumbiel's proposal is also redundant because the word "meet" is used in the claim as well as its proposed definition.  Viewed in light of this intrinsic evidence, Zumbiel's construction of "corner" as a "point" instead of a "region" is wrong and GPI's proposal is correct.

### 2.    "dispensing flap" – Claims 1, 14, 23

| Exemplary Claim | GPI's Proposal | Zumbiel's Proposal |
|---|---|---|
| "***dispensing flap***" (Claims 1, 14, 23 of the '003 Patent) | Needs no construction<br><br>or | "that portion of the carton that is completely separated |

---

[28] Dkt. No. 17 at p. 18-19 (*GPI's PI Motion*); Dkt. No. 24 (*Zumbiel's Opposition to GPI's PI Motion*).

[29] 37 C.F.R. § 1.84(r)(1) (2009) (***emphasis added***).

| 1. A package comprising … a ***dispensing flap*** at the exiting end; … wherein the ***dispensing flap*** extends from the first corner to the second corner in the first panel and in the exiting end; … and wherein all the containers are retained in the carton when the ***dispensing flap*** is separated along the first tear line. | "a part of the carton, defined at least partially by tear lines, capable of creating an opening in the carton to allow dispensing of containers from the carton" | from the carton to facilitate dispensing containers" |

Zumbiel's proposed construction is wrong for at least the following reason:

In addition to its failure to address why the term is unclear and requires a construction, Zumbiel's proposal ignores the '003 Patent's other uses of the term "dispensing flap". Zumbiel fails to consider that the '003 Patent expressly describes and characterizes "dispensing flaps" in the prior art as flaps which "can be folded down upon opening."[30] The dependent claims of the '003 Patent further dictate that "dispensing flap" as used in the independent claims is not limited to a flap that must be "completely separated from carton", as urged by Zumbiel. For example, dependent Claims 9 and 29 (which are not presently asserted in this case) specify that "the dispensing flap is capable of being hinged along the second section."[31] These dependent claims demonstrate that the applicant, and the examiner that allowed these claims, did not intend for the "dispensing flap" to be construed to require complete separation of the dispensing flap from the carton. In fact, claim differentiation requires the independent claim's recitation of "dispensing flap" to be broader than the more specific recitations in the dependent claims. In the '003 Patent, since the dependent claims provide that the flap is capable of being hinged along the second section (claims 9 and 29) and that the flap is capable of being detached from the carton (claims 10-11 and 30-31), the independent claim's recitation of dispensing flap must be broad enough to encompass both hinging and complete detachment from the carton. Since Zumbiel's proposed

---

[30] *See* '003 Patent, 1/19–28 (A22).

[31] *See* '003 Patent, 7/13–15 and 8/52-53 (A25).

13

definition eliminates at least one set of these dependent claims (claims 9 and 29), Zumbiel's construction is wrong. Therefore, if construction for this term is required, GPI's construction is correct.

### 3. "first section" and "second section" – Claims 1, 14, 23

| Exemplary Claim | GPI's Proposal | Zumbiel's Proposal |
|---|---|---|
| "***first section***" (Claims 1, 14, 23 of the '003 Patent)<br><br>1. A package comprising… the dispensing flap including a ***first section*** and a ***second section***; the ***first section*** and the ***second section*** being connected along the first fold line; the ***first section*** being defined at least partially by the first fold line; the ***second section*** being defined at least partially by the first fold line, a first tear line, and a second tear line; the first tear line extending at least partially along and collinear with a second fold line…. | Needs no construction<br><br>or<br><br>"first section" is "a section of the dispensing flap"<br><br>"second section" is "a section of the dispensing flap" | "first section" is "a section of the dispensing flap located within the first panel"<br><br>"second section" is "a section of the dispensing flap located within the exiting end" |

Zumbiel's proposed construction is wrong for at least the following reason:

In addition to its failure to address why these terms are unclear and require a construction, Zumbiel's proposals are based on the false premise that fold line numbers have been preset and fixed for all claims in this patent family. Zumbiel's entire construction argument for "first section" and "second section" turns on whether the reference to the possible location of the various fold lines in an annotated figure submitted by the applicant to the Patent Office was intended to forever limit the applicant to the configurations and naming/numbering schemes used in that one annotated figure. The Federal Circuit's recent decision in *Cordis Corp. v. Boston Scientific Corp.* is instructive on this point.[32]  In *Cordis*, the court addressed whether the term "*first expansion strut pair*" should be limited to a particular "numbering system" even though

---

[32] *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1328 (Fed. Cir. 2009).

two different claims clearly intended the "*first expansion strut pair*" to identify different locations in each different claim.  The Federal Circuit explained:

> … the parties appear to agree that on their face claim 1 and claim 23 each use a different numbering system to describe the relative arrangement of a stent's struts, with the result that the claim 23 "wherein" clause does not exclude 180-degree out-of-phase designs. The question is whether the prosecution history requires that, despite its plain language, the "wherein" clause of claim 23 be construed to use the same numbering system as claim 1. Cordis argues that the prosecution history reflects such a "clear and unmistakable" disclaimer. … We cannot agree.
>
> … After the "wherein" clause was added to claims 1 and 23, the examiner allowed both claims. Cordis argues that the examiner used only the numbering system of claim 1 when allowing both claim 1 and claim 23, and that the examiner necessarily assumed that claim 23 used the same numbering system as claim 1. However, the examiner did not say so, and we cannot simply suppose that the claims were allowed based on an assumed identity of numbering systems. … The plain language of claim 23 cannot be overcome by such unclear prosecution history. …[33]

For all the reasons stated in *GPI's Opening Brief*, the annotated figure relied upon by Zumbiel cannot be used to narrowly define and limit the numbering scheme of the carton fold lines for all existing and future claims in this patent family.

In fact, the location of what is termed the "first fold line" changes among various groupings of patent claims issued to GPI within this patent family.  For example, while in Claim 54 of the '551 Patent the "*fold line*" connecting the first **panel** to the second **panel** is termed the "*first fold line*",[34] Claim 1 of the '003 Patent references the "*first fold line*" as the fold line that connects the first panel **flap** to the first **panel**.[35]  These represent two distinct groups of patent claims.  Note further that the annotated figure relied upon by Zumbiel was submitted by the

---

[33] *Id.* at 1328-29 (internal citations omitted).

[34] *See* '551 Patent, 6/61–62 (A14) ("54. The blank of claim 52 wherein the second panel is foldably connected to the first panel at ***a first fold line***.") (***emphasis added***).

[35] *See* '003 Patent, 6/21, 33–34 (A24) ("1. A package comprising: … a first panel flap connected to the first panel along a ***first fold line*** …") (***emphasis added***).

applicant in support of yet another distinct group of patent claims that do not appear in the '003 or '551 Patents.

In addition to the issues raised in *GPI's Opening Brief*, this intrinsic evidence (entirely ignored by Zumbiel) establishes that the numbering of fold lines of the carton identified for one distinct set of claims should not be imported to require the same specific name/numbering scheme for a different, distinct set of claims or for all claims for this patent family.   The distinct uses of "first fold line" in Claim 54 of the '551 Patent as compared to Claim 1 of the '003 Patent are proof alone that the fold line names/numbers for a distinct set of claims were never intended by the applicant, or examiner, to be preordained for all claims.[36]   Because "first fold line" and "second fold line" were not intended to be limited to certain carton/blank locations, the location of the "first section" and "second section" were not intended to be limited to a specific "first panel" or "exiting end" based on an allegedly preordained location of the "second fold line". Therefore, if construction for these terms is required, Zumbiel's constructions are wrong and GPI's constructions are correct.

### 4.    "partially along and collinear with" – Claims 1, 12, 14, 23, 32

| Exemplary Claim | GPI's Proposal | Zumbiel's Proposal |
|---|---|---|
| "***partially along and collinear with***" (Claims 1, 12, 14, 23, 32 of the '003 Patent)<br><br>1. A package comprising… the first tear line extending at least ***partially along and collinear with*** a second fold line; wherein the first section is defined at least partially by a third tear line and a fourth tear line; the third tear line extending from | Needs no construction<br><br>or<br><br>"***partially along and collinear with***"<br>  "to some extent in a common line" | "***collinear with***"<br>"lying on the same straight line as" |

---

[36] Zumbiel's proposed constructions for "first section" and "second section" require defining the location of "first fold line" (i.e., a line between a panel and a flap).  Note, however, that this defined location cannot read on Claim 54 of the '551 Patent (i.e., a line between a panel and a panel).  This demonstrates that the applicant never intended the "first fold line" to be located at the same predefined location for all patent claims.

| | | |
|---|---|---|
| the first corner and the fourth tear line extending from the second corner; wherein the dispensing flap extends from the first corner to the second corner in the first panel and in the exiting end…. | | |
| 12. The package of claim 1 wherein the second tear line extends at least ***partially along and collinear with*** a third fold line. | | |

Zumbiel's proposed construction is wrong for at least the following reason:

In addition to its improper reliance on a modern dictionary reference and its failure to address why the term[37] is unclear and requires a construction, Zumbiel's proposal fails to consider the nature of the lines at issue and improperly implies that, for example, a tear line overlies a fold line.   GPI's proposed construction is more technically accurate reflection of the nature of the tear line that extends at least partially along and collinear with the second fold line. Therefore, if construction for this term is required, Zumbiel's construction is wrong and GPI's construction is correct.

### 5.    "separated" – Claims 1, 14

| Exemplary Claim | GPI's Proposal | Zumbiel's Proposal |
|---|---|---|
| "***separated***" (Claims 1, 14 of the '003 Patent) | Needs no construction | "disconnected or severed" |
| 1. A package comprising…wherein all the containers are retained in the carton when the dispensing flap is ***separated*** along the first tear line… | or | |
| | "detached" | |

Zumbiel's proposed construction is wrong for at least the following reason:

In addition to its improper reliance on a modern dictionary reference and its failure to address why the term is unclear and requires a construction, Zumbiel re-argues that the "dispensing flap" must be "completely separated" *from the carton*, as opposed to merely

---

[37] As GPI explained in its opening brief, if construction is necessary, the term to be construed should be "partially along and collinear with". (Dkt. No. 48 at p. 21-22).

separated from the *exiting end* (as actually claimed in Claims 23, 33, and 43).  However, Zumbiel's attempt to introduce a new set of words ("disconnected or severed") to replace an already clear term ("separated") is baseless and unhelpful to the finder of fact.  For all of the reasons articulated in *GPI's Opening Brief*, Zumbiel's construction is wrong.  If construction for this term is required, GPI's construction is correct.

### 6.   "pull tab" – Claims 2, 17, 22

| Exemplary Claim | GPI's Proposal | Zumbiel's Proposal |
|---|---|---|
| "***pull tab***"<br>(Claims 17, 22 of the '003 Patent)<br><br>17. The package of claim 16 wherein the means is a ***pull tab*** that is spaced from the first fold line. | Needs no construction<br><br>or<br><br>"a section of the carton that facilitates the opening of the dispensing flap" | "a distinct section of carton attached to the dispensing flap to facilitate the opening of the dispensing flap" |

Zumbiel's proposed construction is wrong for at least the following reason:

In addition to its failure to address why the term is unclear and requires a construction, Zumbiel proposed construction introduces confusing and unnecessary restrictions.  Ironically, Zumbiel packaging (as submitted in connection with GPI's Preliminary Injunction Motion)uses the term "pull tab" to identify to consumers where and how to open their carton.[38]

As part of its construction argument, Zumbiel asserts that the "pull tab" should not be considered "part of the dispensing flap[]"[39] (though, oddly not expressly including this limitation in its definition).  Regardless, Zumbiel's attempt to introduce new words (including "distinct" and "attached") are extra terms that are unnecessary and unhelpful to the finder of fact.  For all of the reasons articulated in *GPI's Opening Brief*, Zumbiel's construction is wrong.   If construction for this term is required, GPI's construction is correct.

---

[38] *See* Dkt. No. 18-1 at pp. 2-3 (*Appendix to GPI's PI Motion*).

[39] *See* Dkt. No. 47 at p. 22 (*Zumbiel's Opening Brief*).

### 7.   "detachable," "detached" – Claims 4, 13, 27, 33

| Exemplary Claim | GPI's Proposal | Zumbiel's Proposal |
|---|---|---|
| "***detachable***"  (Claims 4, 13, 33 of the '003 Patent)<br><br>4. The package of claim 1 wherein the first section is ***detachable*** along the third tear line and fourth tear line, and the second section is ***detachable*** along the first tear line and the second tear line. | Needs no construction<br><br>or<br><br>"capable of being separated" (for detachable)<br><br>and | "completely separable" |
| "***detached***" (Claim 27 of the '003 Patent)<br><br>27. The carton of claim 23 wherein the carton encloses containers and wherein all the containers are retained in the carton when the dispensing flap is ***detached*** along the first tear line and the second tear line. | "separated" (for detached) | "completely separated" |

Zumbiel's proposed construction is wrong for at least the following reason:

Zumbiel again relies on current online dictionary definitions, rather than sources that predate or are contemporaneous with the filing of the patent applications at issue,[40] and fails to address why the terms "detachable" and "detached" are unclear and require a construction beyond their plain and ordinary meaning.[41]

As with the term "separated", Zumbiel uses the term "detachable" and "detached" to re-argue its assertion that the sections of the "dispensing flap" must be completely separated *from the carton*, as opposed to merely separated from the *exiting end*.  As explained above, this argument is without merit.   Further, Zumbiel's introduction of the term "completely" in the definition of "detachable" or "detached", in an attempt to narrow and limit the root word "separate", is baseless and unhelpful to the finder of fact.  For all of the reasons articulated in *GPI's Opening Brief*, Zumbiel's construction is wrong.  If construction for this term is required,

---

[40] *Brookhill*, 334 F.3d at 1299.

[41] *DSW*, 537 F.3d at 1347.

GPI's construction is correct.[42]

Dated:  February 21, 2011        WOMBLE CARLYLE SANDRIDGE & RICE, PLLC

                                 (Co-Counsel)

                                 /s/      James M. Lennon
                                 Kirk W. Watkins (*pro hac vice*)
                                 Email: kwatkins@wcsr.com
                                 Michael A. Cicero (*pro hac vice*)
                                 Email: mcicero@wcsr.com
                                 271 17th Street, Suite 2400
                                 Atlanta, Georgia 30363
                                 Telephone:  (404) 872-7000
                                 Facsimile:  (404) 870-8178

                                 James M. Lennon (pro hac vice)
                                 Email: jlennon@wcsr.com
                                 222 Delaware Ave., Suite 1501
                                 Wilmington, Delaware 19801
                                 Telephone: (302) 252-4326
                                 Facsimile: (302) 661-7726

                                 -AND-

                                 Timothy J. McDermott, Esquire
                                 Trial Counsel
                                 Florida Bar No. 0747531
                                 Email: timothy.mcdermott@akerman.com
                                 Ryan R. Fuller
                                 Florida Bar No. 635324
                                 Email: ryan.fuller@akerman.com
                                 AKERMAN SENTERFITT LLP
                                 530 N. Laura Street, Suite 2500
                                 Jacksonville, FL  32202
                                 Telephone: (904) 798-3700
                                 Facsimile: (904) 798-3730

                                 *ATTORNEYS FOR PLAINTIFF*

---

[42] Finally, GPI notes that GPI's Comparison Chart of Proposed Constructions and Stipulations inadvertently states that the parties having competing proposals for the term "capable of being hinged along."  In reality, Zubmiel stipulates to GPI's proposed definition ("may be turned or rotated about").  (A3)

*GRAPHIC PACKAGING INTERNATIONAL, INC.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

GRAPHIC PACKAGING
INTERNATIONAL, INC.,
a Delaware corporation,

Plaintiff,

vs.

C.W. ZUMBIEL CO.,
an Ohio corporation,

       Defendant.

Civil Action File No.

3:10-cv-891-99TJC-JBT

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this day that a true and correct copy of the foregoing **PLAINTIFF GRAPHIC PACKAGING INTERNATIONAL, INC'S RESPONSIVE CLAIM CONSTRUCTION BRIEF** has been served in the manner indicated below and properly addressed to the following attorneys of record: indicated below and properly addressed to the following attorneys of record:

| | |
|---|---|
| ☐ By Hand<br>☐ By Facsimile<br>☐ By US Postal Service (1st Class)<br>☐ By Overnight Delivery<br>☒ By Email | Gregory F. Ahrens, Esq.<br>gahrens@whepatent.com<br>P. Andrew Blatt, Esq.<br>dblatt@whepatent.com<br>WOOD HERRON & EVANS LLP<br>441 Vine Street<br>2700 Carew Tower<br>Cincinnati, OH  45202-2917 |

| | | |
|---|---|---|
| ☐ | By Hand | R. Kyle Gavin, Esq. |
| ☐ | By Facsimile | kgavin@lilesgavin.com |
| ☐ | By US Postal Service (1st Class) | LILES, GAVIN, COSTANTINO, GEORGE & |
| ☐ | By Overnight Delivery | DEARING, P.A. |
| ☒ | By Email | 225 Water Street, Suite 1500 |
| | | Jacksonville, FL 32202 |

Dated this 21st day of February, 2011.

/s/     James M. Lennon
James M. Lennon
jlennon@wcsr.com