**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

GRAPHIC PACKAGING
INTERNATIONAL, INC.,

      Plaintiff,

vs.                                                            Case No. 3:10-cv-891-J-37JBT

C.W. ZUMBIEL CO.,

      Defendant.

**ORDER**

This cause is before the Court on Plaintiff Graphic Packaging International, Inc.'s Renewed Motion for Judgment as a Matter of Law (Doc. No. 201), filed April 6, 2012, and Defendant C.W. Zumbiel Co.'s Opposition to Plaintiff Graphic Packaging International, Inc.'s Renewed Motion for Judgment as a Matter of Law (Doc. No. 205), filed April 12, 2012.

**BACKGROUND**

A jury returned a verdict in this patent case on January 18, 2012. (Doc. No. 151.) The Jury found Defendant's Diet 7-Up Carton and Kroger Cartons infringed claims 23 and 33 of U.S. Patent No. 7,134,551 ("the '551 Patent") and that such cartons did not infringe any of the asserted claims of U.S. Patent No. 7,780,003 ("the '003 Patent"). The jury declined to find that Defendant contributed to another's infringement of any of the asserted claims of the '551 Patent or the '003 Patent.

Plaintiff now asks the Court to grant it judgment as a matter of law ("JMOL") against Defendant that all the asserted claims of the '003 Patent are directly and literally infringed, and that Defendant is liable for contributory infringement of all of the claims of

the '551 Patent and the '003 Patent which were found to be infringed.

## APPLICABLE STANDARDS

The Federal Circuit applies the law of the regional circuit when considering a motion for JMOL. *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1343 (Fed. Cir. 2012). In the Eleventh Circuit, courts must "consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party." *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989) (citing *Miles v. Tenn. River Pulp & Paper Co.*, 862 F.2d 1525, 1527-28 (11th Cir. 1989)). Where no "legally sufficient evidentiary basis" allows a "reasonable jury to find" for the nonmoving party on an issue, this Court may properly grant judgment as a matter of law as to that issue. *Rossbach v. City of Miami*, 371 F.3d 1354, 1356 (11th Cir. 2004); Fed. R. Civ. P. 50(a)(1).

## DISCUSSION

The Court addresses two issues raised in Plaintiff's Renewed Motion.[1] First, the Court will address Plaintiff's contention that there was no legally sufficient evidentiary basis for the jury to find Defendant's products did not infringe the claims of the '003 Patent. Then, the Court addresses Plaintiff's arguments regarding contributory infringement of the claims the jury found infringed.

### A. Infringement of the Claims of the '003 Patent

Plaintiff contends Defendant's expert witness, Kimmel, did not conduct a full infringement analysis and, when confronted on cross examination, admitted that the infringement analysis of Defendant's expert, Anthony, was correct. Defendant argues in response that Kimmel did not admit that Anthony's infringement analysis was correct.

---

[1] The Court addresses only two points raised by the parties in this Order. The remaining arguments were not persuasive.

Rather, Kimmel merely acknowledged that the demonstratives used by Anthony were correctly labeled. On this issue, the Court finds Plaintiff's arguments more persuasive.

At trial, Defendant argued a tear line could not be found in the accused cartons and, therefore, Plaintiff had not proved that element of the claim was present. That tear line, described in the claim as the "first tear line extending at least partially along and collinear with the second fold line," partially demarks the second section of the dispensing flap. The non-infringement analysis of Defendant's expert, Kimmel, relating to the claims of the '003 Patent turned on the absence of the first tear line, as acknowledged by Kimmel. (Tr. 25:1-10 (claim 1); 25:21 to 26:7 (claim 1); 26:8-20 (claims 5, 8, 9, and 10-12); 26:21 to 27:5 (claim 14); 27:13-19 (claims 14 and 21); 27:21 to 28:12 (claims 23 and 29-31).)[2]

Kimmel testified that, in his analysis, he located the first tear line based upon a specific orientation of the accused cartons – an orientation which placed the first corner in a particular manner. (Tr. 61:16 to 62:9; 62:25 to 63:3.) Kimmel testified further he did not do, and could not offer an opinion on, the analysis of the non-infringement of these claims if the carton was oriented in another manner. (Tr. 63:4-12; 86:25 to 87:5.)

Kimmel limited his analysis in this manner even though he understood that the orientation of the carton could not be so limited. (Tr. 86:4-15 ("I based my report on the figures in the patent, specifically figure 2, and it's my understanding that it's been acknowledged that the claim can be interpreted either way.").) In fact, Kimmel specifically testified to the narrow nature of his analysis: "I base my analysis on the pictures in the patent." (Tr. 86:14-15.)

---

[2] In this Order, the Court cites to the page and line of volume VII of the January 12, 2012 trial transcript.

3

The Court instructed the parties not to construe the claims of the '003 Patent in this manner, however. In its claim construction order, the Court noted:

> While the figures provided by the inventor support Zumbiel's interpretation, "the mere fact that the patent drawings depict a particular embodiment of the patent does not operate to limit the claims to that specific configuration." *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.,* 318 F.3d 1143, 1148 (Fed. Cir. 2003). Moreover, "even where a patent describes only a single embodiment, claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words of expressions of manifest exclusion or restriction." *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1381 (Fed. Cir. 2009) (quotation omitted). Nothing in the specification of the '003 patent or its prosecution history reveals such an intention. The Court therefore rejects Zumbiel's construction and declines to limit the claims to the configuration depicted in the figures included in the specification and prosecution history.

(Doc. No. 58, p. 20.) At trial, as noted by the parties in the briefs, the Court also reiterated that the correct claim construction is not limited by a particular orientation of the accused product. The Court instructed the parties that the analysis could include cartons oriented in various ways: "If it infringes either way, it's an infringement."

Nevertheless, Kimmel based his non-infringement analysis on his own limited – and incorrect – claim interpretation. He said as much himself:

- "Yes, I based my analysis on what I read in the patent; and in my opinion, this is the tear line that we are talking about." (Tr. 25:25 to 26:2 (emphasis added).)

- "I based my analysis on what I read in the specification, because I've been taught that you interpret the claims in terms of the intrinsic evidence. Intrinsic evidence is what's found in the claims and in the specification and in the prosecution history, and that's what I did." (Tr. 88:15-19 (emphasis added).)

- "You are asking me to do an analysis based on Mr. Anthony's assumptions, and I haven't done that analysis." (Tr. 89:2-3 (emphasis added).)

Nowhere in his testimony does Kimmel indicate his analysis was based on the proper,

4

more expansive interpretation that the Court instructed the parties to use. Again, Kimmel conducted his analysis using a flawed methodology despite recognizing the proper analysis is not so limited. (Tr. 86:4-15 ("I based my report on the figures in the patent, specifically figure 2, and it's my understanding that it's been acknowledged that the claim can be interpreted either way.").) Plaintiff recognized this flaw in Kimmel's analysis and objected to it.

In addition, on cross examination, Plaintiff's counsel put questions to Kimmel that walked the witness through an infringement analysis in which the cartons where oriented in a different manner. (Tr. 86:1 to 90:6.) During this examination, Kimmel conceded that, once the carton was oriented in the manner shown by Defendant's expert, there was a first tear line present as shown in the diagrams used by Anthony. (*Id.*) This concession was not, as characterized by Defendant, merely that the diagram was labeled correctly by Defendant's expert. Rather, it is Kimmel's agreement with the analysis of Defendant's expert, who opined that a first tear line was present in the accused cartons.

In view of Kimmel's reliance on an unduly narrow and incorrect claim interpretation,[3] and his concession that the analysis of Anthony was correct, the Court finds Plaintiff's Motion is due to be granted. The Court concludes there is no legally sufficient evidentiary basis for a reasonable jury to find that the accused cartons did not infringe claims 1, 5, 8-12, 14, 21, 23, and 29-31 of the '003 Patent.

---

[3] *See, e.g.*, *Cordis Corp. v. Boston Scientific Corp.*, 658 F.3d 1347, 1358 (Fed. Cir. 2011) (disregarding expert testimony where such testimony was based on an incorrect claim interpretation).

### B. Contributory Infringement

Plaintiff contends Defendant is contributory liable for its customer's infringement of the claims of the '551Patent and the '003 Patent. Defendant contends it did not sell cartons filled with cans or bottles to its customers and, therefore, the jury could have only found that it infringed claim 23 and claim 33 of the '551 Patent to the extent it filled a limited number of cartons with cans or bottles as part of its quality control process. Defendant also contends Plaintiff failed to prove Defendant's cartons had no non-infringing uses.

To establish contributory infringement liability, the patent owner must show, among other things, that there are no substantial non-infringing uses. 35 U.S.C. § 271(c). "[N]on-infringing uses are substantial when they are not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009). In assessing whether a use is substantial, the fact-finder may consider "the use's frequency, . . . the use's practicality, the invention's intended purpose, and the intended market." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010). The testimony at trial demonstrated the cartons manufactured by Defendant were not staples of commerce. Rather, such cartons were precisely-manufactured articles with a limited use, i.e., packaging to hold bottles and cans. The testimony offered by Defendant did not represent a substantial use of its cartons. The fact that the cartons could be filled with "marbles" and "baseballs" – while literally true – merely notes the type of fanciful, "far-fetched, illusory, impractical, [and] aberrant" uses which are not <u>substantial</u> non-infringing uses. *Vita-mix Corp.*, 581 F.3d at 1317.

The Court finds that Plaintiff's motion for JMOL is well-taken with regard to the

6

issue of contributory infringement.

## CONCLUSION

Accordingly, it is hereby **ORDERED**:

Plaintiff Graphic Packing International, Inc.'s Renewed Motion for Judgment as a Matter of Law (Doc. No. 201) is **GRANTED**.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, on July 16, 2012.

ROY B. DALTON JR.
United States District Judge

Copies:

counsel of record