# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

GRAPHIC PACKAGING
INTERNATIONAL, INC.,

       Plaintiff,

vs.                                     Case No. 3:10-cv-891-J-37JBT

C.W. ZUMBIEL CO.,

       Defendant.

## ORDER GRANTING PERMANENT INJUNCTION

This cause is before the Court on Plaintiff's Motion for Permanent Injunction (Doc. No. 202), filed April 6, 2012, Defendant's Memorandum in Opposition (Doc. No. 207), filed April 12, 2012, and Plaintiff's Reply (Doc. No. 203), filed April 6, 2012.

## BACKGROUND

A jury returned a verdict in this patent case on January 18, 2012.  (Doc. No. 151.) The Jury found Defendant's Zipper Pack cartons infringed claims 23 and 33 of U.S. Patent No. 7,134,551 ("the '551 Patent") and that such cartons did not infringe any of the asserted claims of U.S. Patent No. 7,780,003 ("the '003 Patent").  The jury declined to find that Defendant contributed to another's infringement of any of the asserted claims of the '551 Patent or the '003 Patent.  Thereafter, the Court granted judgment as a matter of law on the issue of infringement of claims 1, 5, 8-12, 14, 21, 23, and 29-31 of the '003 Patent by Defendant's Zipper Pack cartons.

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff now seeks to permanently enjoin Defendant from selling or offering for sale its Zipper Pack cartons. (Doc. No. 202). Defendant opposes.  (Doc. No. 207.)

**APPLICABLE STANDARDS**

A party seeking a permanent injunction must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law . . . are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1128 (11th Cir. 2005). The decision to grant or deny a permanent injunction "is an act of equitable discretion by the district court." *eBay*, 547 U.S. at 391 (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982)).

**DISCUSSION**

Plaintiff contends the present case fits comfortably within the "historical practice" of courts granting injunctive relief upon a finding of patent infringement. Defendant argues, in response, that the "well-established principles of equity" do not weigh in favor of granting injunctive relief in this case. The Court turns to those principles *in seriatim*.

**A.    Has Plaintiff Suffered Irreparable Harm?**

Plaintiff offers the following factors in support of a finding of irreparable harm: (1) the nature of the patent right; (2) the direct competition between the parties in the paperboard market; (3) the market share lost by Plaintiff attributable to Defendant's infringing sales; (4) Plaintiff's "loss of reputation for innovation;" (5) price erosion; (6) Plaintiff's loss of goodwill; (7) Plaintiff's reluctance to license its patented products; and (8) Defendant's inability to satisfy a judgment.

Defendant responds to each of Plaintiff's contentions. First, Defendant argues Plaintiff cannot rely upon the nature of the patent right as evidence of irreparable harm.

In response to Plaintiff's second factor, Defendant argues that courts routinely find no evidence of irreparable harm where the infringer is a direct competitor of the patent owner.  Defendant asserts that the evidence of lost market share, reputation for innovation, and customer goodwill offered by Plaintiff is too speculative to establish irreparable harm.  Defendant submits, moreover, that Plaintiff has mischaracterized the testimony offered in support of Plaintiff's price erosion argument, and is wrong to argue Defendant does not have the financial wherewithal to pay a royalty.  Defendant also contends that Plaintiff's cross-licensing of the rights secured by the patents-in-suit significantly undermines its request for injunctive relief.

The Court concludes Plaintiff has satisfied its burden.  The evidence adduced at trial demonstrated that Plaintiff, Defendant, and a limited number of other companies compete in the market for beverage cartons and similar products.  The evidence also demonstrated that Defendant sold an infringing product and submitted competing bids to sell that product to Plaintiff's customers.  As Mr. Zumbiel testified at trial, Plaintiff and Defendant are "fiercely competitive."

The evidence adduced at trial demonstrated further that Defendant's business strategy focused on being the low-cost supplier of cartons, and that the purchasers of the parties' products viewed Defendant's bids as a spoiler to be used to reduce bids from Plaintiff and other market participants. *See, e.g.*, *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1306 (Fed. Cir. 2012) (no clear error in trial court's finding of irreparable harm where the evidence demonstrated infringer's marketing strategy was to tout its product as "a cheaper but otherwise equal alternative" to the patent holder's product); *Celsis In Virto, inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (finding irreparable harm where the evidence demonstrated price erosion, damage to ongoing customer

3

relationships, loss of customer goodwill, and loss of business opportunities); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142 (Fed. Cir. 2011) (concluding trial court committed clear error where the record contained evidence of direct competition, loss of market share, and price erosion).

Based on this and additional evidence presented at trial, the Court concludes Plaintiff has shown irreparable harm.

### B. Are Remedies Available At Law Inadequate?

Plaintiff asserts monetary damages would be inadequate in view of the parties' "fiercely competitive" relationship. Plaintiff also argues that a monetary award would "reward" Defendant and would all but assure future litigation over royalty payments. Defendant contends an award of an ongoing royalty is appropriate in this case and, in any event, an award of injunctive relief is just as likely to result in future litigation as a monetary award.

The Court concludes Plaintiff demonstrated at trial that monetary damages are inadequate. The evidence adduced at trial showed that the market participants rely on long-term, high-volume orders of cartons to turn a profit. Large volumes are necessary for Plaintiff to operate its facilities at maximum efficiency and forecast production goals. The Court finds that some damages sustained by Plaintiff's integrated operations from continued infringement, i.e., damages arising from Plaintiff's facilities operating at less than maximum efficiency, would be difficult to estimate.[1] This, as well as the parties' "fiercely competitive" relationship, counsel against a finding that a royalty payment can be crafted that would adequately compensate Plaintiff for the infringing sales and lost

---

[1] In fact, although the parties' damages experts noted the possibility of damages arising from lost intercompany profits, neither provided a coherent analysis of those damages.

4

business opportunities. *See i4i Ltd. v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010) ("Difficulty in estimating monetary damages is evidence that remedies at law are inadequate."); *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 703 (Fed. Cir. 2008) (concluding the difficulty in estimating monetary damages reinforces the inadequacy of a remedy at law); *Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994) (recognizing that "future infringement . . . may have market effects never fully compensable in money").

As such, the Court concludes Plaintiff has met its burden with regard to the adequacy of monetary damages.

**C.    Does The Balance Of Hardships Weigh In Plaintiff's Favor?**

Plaintiff contends that any hardship that falls on Defendant from an injunction would be minimal given the small number of cartons it sold. Plaintiff argues further that entry of an injunction would serve notice to the packaging industry that its patents are valid and enforceable, especially since the "process of proving Zumbiel's infringement has been long, expensive, and difficult."

In response, Defendant points to an *inter partes* reexamination now pending before the U.S. Patent and Trademark Office. Defendant argues that, since the Patent Office has issued non-final rejections of the asserted claims of the '551 Patent, it would suffer substantial hardship due to loss of customers if an injunction were issued. Defendant also takes issue with Plaintiff's reliance on its past sales when an injunction would prevent future sales of its products. Plaintiff also argues that this Court cannot take litigation costs into consideration when determining whether to grant injunctive relief.

Plaintiff contends, in reply to Defendant's arguments relating to the

reexamination of the '551 Patent, that those proceedings were only an "undisclosed back-up plan." Plaintiff contends Defendant initiated the *inter partes* reexamination just before trial was to commence in this case, and that Defendant raised the same issues of validity based upon the same prior art as it argued before the jury in this case. As such, according to Plaintiff, Defendant is seeking a second bite of the apple through an administrative process. Plaintiff argues further that the administrative decision of the Patent Office is not final and is not indicative of claim validity.

The Court finds the balance of hardships tips in Plaintiff's favor. First, the Court is mindful that the judiciary is not the only actor when it comes to the determination of the validity of patent claims. For instance, Congress provided (some time ago) the Patent Office with the authority to reexamine patent claims, *see* 35 U.S.C. §§ 302, 311 and (more recently) the authority to review a claim's validity in a post-grant proceeding, *see id.* § 321. The pending reexamination, however, does not provide significant support for declining to grant an injunction in this case. The reexamination proceeding is in its initial stages. The Patent Office has issued only a single, non-final determination of the validity of the certain claims of the '551 Patent. This Court is not inclined to defer entry of a remedy to which Plaintiff may be otherwise entitled based on a non-final decision of the Patent Office. Further, Defendant was provided the opportunity to present its invalidity arguments to a jury, and the jury found such arguments wanting.

In addition, the reexamination proceeding has no bearing on Defendant's infringement of the claims of the '003 Patent. To the extent the reexamination proceedings are relevant to the present Motion, the Court notes that an injunction can be crafted in such a way as to ameliorate any harm that may result once the Patent

Office finally cancels the claims subject to reexamination.  *Cf. Broadcom Corp.*, 543 F.3d at 704 (concluding an injunction with a sunset provision was a reasonable means to balance harm suffered by the infringer).  Here, Defendant's proposed harms can be lessened by limiting an injunction in an appropriate manner.

The Court concludes Plaintiff has demonstrated it would suffer harm if Defendant were permitted to continue to compete against it by selling or offering to sell the infringing products, and that such harm outweighs the hardships advanced by Defendant.

### D.    Is An Injunction In The Public Interest?

Plaintiff contends no important public interest would be served in declining injunctive relief, and that the public interest in maintaining a strong system supports injunctive relief.  Defendant, on the other hand, argues that the public interest would be disserved by granting an injunction where the Patent Office has made a non-final determination that the patent claims are invalid.  Defendant argues further that no injunction is needed here because Plaintiff can be compensated by an award of monetary damages.

The Court finds Plaintiff has demonstrated that the public interest weighs in favor of entry of an injunction in this case.  As discussed above, Defendant cannot lean on the reexamination proceeding in opposing an injunction in this case because some of the claims found to be infringed are not subject to reexamination.  Further, as discussed above, the Court has found that monetary damages would be difficult to assess and would not be adequate to compensate Plaintiff.  Therefore, those arguments are not persuasive.

In this case, the patents-in-suit claim a limited number of products in a crowded,

competitive field. There are alternatives to the infringing products available in the marketplace. Thus, the public would not be deprived of use of the claimed products if this Court were to enjoin Defendant from making, selling or offering to sell its infringing product. *See, e.g.*, *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 12-cv-630, 2012 WL 2576136, at *9 (N.D. Cal. Jul. 3, 2012) (reasoning the disappointed expectations of some members of the public are mitigated where the product subject to the injunction would be but one of many similar products in the marketplace). Accordingly, this Court, like the Federal Circuit, concludes the public interest "is best served by enforcing patents that are likely valid and infringed." *Abbot Labs. v. Andrx Pharm., Inc.*, 452 F.2d 1331, 1348 (Fed. Cir. 2006).

\* \* \* \* \*

In sum, the Court finds Plaintiff has demonstrated its entitlement to injunctive relief in this case.

## CONCLUSION

Plaintiff Graphic Packaging International, Inc.'s Plaintiff's Motion for Permanent Injunction (Doc. No. 202) is **GRANTED**. Accordingly, it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

Defendant C.W. Zumbiel Co. and its officers, agents, servants, directors, employees, and all those persons in active concert or participation with such persons who receive actual notice of this Order by personal service or otherwise are hereby enjoined from infringing, inducing the infringement of, and contributorily infringing claim 23 or claim 33 of U.S. Patent No. 7,134,551 ("the '551 Patent") or claims 1, 5, 8-12, 14, 21, 23, and 29-31 of U.S. Patent No. 7,780,003 ("the '003 Patent") until the expiration of the patent or the final cancelation of said claims, including through any of the following

actions:

    a.    Manufacturing, selling, or offering to sell within the United States the Zipper Pack or a product not more than colorably different from the Zipper Pack;

    b.    Inducing the infringement of one or more of the above patent claims by inducing another to the use the Zipper Pack or a product not more than colorably different from the Zipper Pack; and

    c.    Contributing to the infringement of one or more of the above patent claims by making, importing, offering to sell, or selling within the United States the Zipper Pack or a product not more than colorably different from the Zipper Pack.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, on August 14, 2012.

 

ROY B. DALTON JR.
United States District Judge

Copies:

counsel of record